IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JOAN VAUGHN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 20-cv-1119-TMP |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Before the court is plaintiff Joan Vaughn's appeal from a final decision denying her application for supplemental security income under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34, filed on June 2, 2020. (ECF No. 1.) The parties have consented to the jurisdiction of the United States magistrate judge under 28 U.S.C. § 636(c). (ECF No. 16.) For the reasons below, the Commissioner's decision is AFFIRMED.

## I.   FINDINGS OF FACT

Joan Vaughn filed the instant claim for supplemental security income on June 13, 2017. (R. at 162.) Her application alleges that she suffers from chronic obstructive pulmonary disorder ("COPD"), emphysema, "numbness in [her] left arm," being "unable to walk anymore," a "hernia in [her] abdomen," "possible bacteria on [her] spine," arthritis, high blood pressure, "fluid," and "nerves." (R.

at 181.) Her application alleges that she has been disabled since November 1, 2011, and that she was last eligible for disability insurance benefits on December 31, 2015. (R. at 162, 176.) Vaughn's application was denied initially on July 14, 2017, and on reconsideration on October 12, 2017. (R. at 66, 77.) Subsequently, Vaughn requested a hearing before an administrative law judge ("ALJ"), which was held on November 16, 2018. (R. at 30.)

During the hearing, Vaughn testified that she last worked in 2011 as a housekeeper and that, prior to being a housekeeper, her job was to help clean up construction sites.[1] (R. at 35-37.) She also testified that she did not graduate high school, only advancing past the sixth grade. (R. at 35.) Although she tried to do most of the housekeeping in her home during the relevant period of disability, her husband lived with her and helped by often grilling dinner outside.[2] (R. at 52.) Next, Vaughn testified about her COPD diagnosis and how it has impacted her life since, stating that it is easily inflamed by irritants and makes it difficult for her to walk without being out of breath. (R. at 38-41.) However, she also testified that, although her symptoms were "bad" prior to

---

[1]The vocational expert would later classify this work as "waste collector." (R. at 61.)

[2]Vaughn testified that, as of the time of the hearing, her grandchildren lived with her and helped around the house as well. (R. at 51-52.) However, her grandchildren did not live with her prior to the date she was last insured. (R. at 60.)

2015, they have gotten worse since then. (R. at 40.) Through the end of 2015, Vaughn testified that she smoked more than a pack of cigarettes a day despite being told by her doctors to stop smoking. (R. at 38-39.) Additionally she testified that, while partly due to her COPD symptoms, the primary reason that she avoids climbing stairs is her fear of heights. (R. at 54-55.)

Vaughn also testified about her back and lower body pain, stating that she has been told by her doctors on several occasions that she needed a magnetic resonance imaging ("MRI") exam to evaluate her back issues. (R. at 45.) However, she never underwent an MRI because she could not afford the exam. (R. at 45.) Similarly, she was instructed to attend physical therapy in 2017 but did not go because of the cost. (R. at 45, 59.) She takes Aleve to manage her pain and Meloxicam for her arthritis. (R. at 45-46, 54.) Vaughn testified that, as of the hearing, her back pain would often get so bad that she would cry and that, although it has gotten worse in recent years, she was in significant pain prior to 2015. (R. at 51.) She also testified that, following an X-ray in 2017, she learned that she had broken her collarbone at some point in the past and that it healed incorrectly. (R. at 47.) Regarding swelling in her ankles, Vaughn testified that she takes medication to manage her blood pressure and fluid levels, but that the medication makes her have to go to the bathroom constantly. (R. at 48-49.) She testified that the swelling in her ankles was a

contributing factor to her decision to stop working at construction sites. (R. at 44.)

Vaughn also testified that her gallbladder was removed in 2014 and that, since then, she has suffered from acid reflux. (R. at 44-45, 49.) She later had a colonoscopy, but was unable to see the results because she could not afford the co-pay. (R. at 45.) After her gallbladder surgery, Vaughn discovered that she had a thyroid disorder and a hernia during a computed tomography scan ("CT scan") at Baptist Hospital. (R. at 50.) However, she testified that her doctors declined to treat her hernia because it was not impacting her blood flow or affecting her organs. (R. at 50.) Vaughn testified that her thyroid disorder has caused her to gain weight, although most of her weight gain has been since 2015. (R. at 34, 50-51.) Her thyroid disorder also has caused her to feel fatigued "all the time" and has gotten significantly worse in "[t]he last two or three years."[3] (R. a 51.)

On March 18, 2019, the ALJ issued a decision finding that Vaughn was not disabled at any time between her alleged onset date and the date that she was last eligible for insurance. (R. at 24.) The ALJ reached this decision by following the Five Step Process for evaluating disability benefits claims. (R. at 16.) At the

---

[3]A vocational expert also testified at the hearing regarding what work existed in significant numbers in the national economy for hypothetical individuals with varying residual functional capacities ("RFC") and work-related limitations. (R. at 61-65.)

outset of her opinion, the ALJ found that Vaughn "last met the insured status requirements of the Social Security Act on December 31, 2015," thereby making the relevant period of disability between November 1, 2013, and December 31, 2015. (R. at 17.) The ALJ then found that Vaughn had not engaged in any substantial gainful activity during the relevant period of disability. (R. at 17.) At the second step, the ALJ found that Vaughn suffered from several severe impairments, including obesity, mild lumbar spine degenerative spondylosis, mild thoracic spine spondylosis, hypertension, emphysema, COPD, and gastroesophageal reflux disease. (R. at 17.) In reaching this conclusion, the ALJ also considered Vaughn's small hiatal hernia, left kidney angiomyolipoma, and dysphagia, finding that while the impairments were contained in the record, there was "no evidence that these impairments resulted in lasting sequelae." (R. at 17-18.) Additionally, the ALJ observed that Vaughn suffered from medically determinable anxiety and depression, but that neither impairment caused "more than minimal limitation[s] in [Vaughn]'s ability to perform basic mental work activities and were therefore non-severe." (R. at 18.)

Next, the ALJ found that Vaughn "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 19.) In making this determination,

the ALJ first observed that the record did not support a finding that Vaughn had a disorder of the spine (Section 11.04) or a chronic respiratory disorder (Section 3.02), and that there was no evidence that her hypertension affected a specific body system enough to warrant meeting a listed impairment. (R. at 19.) The ALJ also "considered the effects of [Vaughn]'s obesity in reducing [her] residual functional capacity pursuant to Social Security Ruling 02-01p" and observed that, while her obesity "could reasonably exacerbate [her] coronary artery disease and cardiomyopathy," it did not combine with another impairment to meet or equal a listing. (R. at 19.) Regardless, however, the ALJ stated that she considered limitations attributable to Vaughn's obesity in crafting her RFC. (R. at 19.)

The ALJ then proceeded to determine Vaughn's RFC. The ALJ opined that, during the relevant period of disability, Vaughn had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ramps and stairs; occasionally climb ropes, ladders and scaffolds; can occasionally stoop; frequently kneel, occasionally crouch and crawl. There are no limitations with regard to the ability to balance. In addition, she can have occasional exposure to extreme heat[,] dusts, fumes, odors, gases, and other pulmonary irritants.

(R. at 20.) In order to reach this conclusion, the ALJ first noted that Vaughn's testimony conflicted with a finding of more severe restrictions in a number of respects. Specifically, the ALJ pointed

out that, throughout the relevant period of disability, Vaughn reported smoking one to one and a half packs of cigarettes a day, that she only took Aleve for her pain, that she testified her medication works "ok" to control her blood pressure and swelling, and that she was able to do some cooking and laundry. (R. at 20.)

Next, the ALJ walked through Vaughn's treatment records during the relevant period of disability. In doing so, the ALJ observed that Vaughn "had a normal chest X-ray in August 2013." (R. at 21, 266.) The next August, while she reported a persistent cough and an examination showed some rhonchi in the bilateral lobes, an examination found "no wheezes or rales." (R. at 21, 295.) Additionally, although a CT scan showed evidence of emphysema and subtle emphysematous changes, the scan also showed "no obstruction of her central airways and no acute abnormalities were found." (R. at 21, 279.)

The ALJ also observed that Vaughn was diagnosed with COPD in December of 2014, but that "on examination[] her lungs were clear to auscultation bilaterally, with good air movement, and no wheeze, rales, or rhonchi." (R. at 21, 374.) Further, subsequent treatment did not show her condition worsening, as an examination in June 2016 (shortly after the relevant period of disability lapsed) showed "no cough[ing], wheezing, or shortness of breath." (R. at 21, 332.) As for her reported back pain, the ALJ observed that "[i]n December 2014, radiology reports revealed mild thoracic

spondylosis and mild degenerative spondylosis of her lumbar spine." (R. at 21, 360.) The ALJ then contrasted her limited range of motion, positive straight leg test, and reported inability to ambulate or bend at the waist with her indications at the visit that "she was able to exercise, prepare her own meals, do her own housework and home maintenance, and bathe and groom herself" and her overall conservative treatment. (R. at 21, 362.) Likewise, the ALJ highlighted that, in June 2016, Vaughn's reported back pain and limited range of motion were inconsistent with evidence in the record that her gait and station were normal and that the "appearance of her thoracolumbar back was normal." (R. at 21, 332-33.)

Next, the ALJ noted that Vaughn "complained of reflux and trouble swallowing" in August 2014, which was diagnosed as gastroesophageal reflux disease. (R. at 21, 303-04.) Her esophagus was stretched in December 2014, but she still had mild symptoms that required conservative treatment in the years afterwards. (R. at 21, 325-26, 333.) The ALJ also pointed out that Vaughn was diagnosed with uncontrolled hypertension in January of 2013 and that her medication was increased in August 2014. (R. at 21, 299, 404.) However, according to the ALJ, records from later that month showed that her blood pressure quickly improved under the new

regiment.[4] (R. at 21, 295.) Additionally, the ALJ identified that Vaughn's BMI was 33.8 in August 2014 and was 33.6 in May 2016. (R. at 22.)

The ALJ then turned to the medical opinion evidence in the record, beginning with Dr. Thomas Thrush, M.D., and Dr. Martin Rubinowitz, M.D. (R. at 22.) Both Dr. Thrush and Dr. Rubinowitz are state agency reviewing physicians, and both opined that Vaughn was not disabled (despite exhibiting a number of severe impairments) because "there [was] insufficient evidence to evaluate the claim." (R. at 67-75, 78-86.) The ALJ found that neither physician was persuasive because both determined that there was insufficient evidence to evaluate Vaughn's claim despite the fact that the record contained physical examinations and objective evidence prior to the date last insured. (R. at 22.)

The ALJ next turned to Dr. Stephen Collier, M.D., who reviewed Vaughn's medical records and issued a medical opinion on November 7, 2018. Dr. Collier summarized his analysis of Vaughn's medical records in a letter, stating

> Ms. Vaughn suffers from multiple current medical problems. X-rays from 12/11/2014 demonstrate lumbar degenerative spondylosis. Spirometry report from 12/9/2014 demonstrates mild restrictive abnormalities. She has a long-standing history of hypertension. She has

---

[4]Vaughn's blood pressure medication was increased on August 14, 2014, and her doctor observed that her blood pressure was "good" on August 26, 2014. (R. at 295, 299.) Vaughn's doctors also recommended moderate exercise during both of these visits. (R. at 295, 299.)

a history of tobacco use. She has a history of depression
and anxiety. She was diagnosed with chronic obstructive
pulmonary  disease  12/9/2014.  She  has  complained  of
chronic lower back pain for several years. It limits her
ability to ambulate, lift objects, and exercise. She has
been treated for acid reflux with some dysphagia. Her
records  mention  frequent  feelings  of  depression
described as overwhelming sadness and hopelessness with
low self-esteem. She is bothered by anxiety and panic
attacks. She had her gall bladder removed in 2014. Over
time her back pain has worsened. She is very intolerant
of  prolonged  sitting,  standing,  or  walking.  She
experiences  joint  pain  related  to  obesity  and
generalized osteoarthritis. She has tried phentermine
with better diet and exercise unsuccessfully to lose
weight.  She  has  thirty  pack  years  of  smoking.
Musculoskeletal exams describe limited range of motion
involving her hips and knees. Chest x-rays demonstrate
abnormal changes, describing centrilobular emphysema.

(R. at 429.) Dr. Collier also issued Vaughn a Medical Source

Statement Form, opining that Vaughn's ability to lift and/or carry

things is affected by her impairments. (R. at 430.) For instance,

Dr. Collier opined that Vaughn could occasionally lift ten pounds

but can frequently lift less than that because of her generalized

osteoarthritis, limited range of motion, and lumbar and thoracic

spine spondylosis. (R. at 430.) Dr. Collier also opined that Vaughn

could stand and/or walk for less than two hours in a given workday

because of her chronic back pain, thoracic and lumbar spondylosis,

and osteoarthritic hips and joints. (R. at 430.) He also opined

that she could sit less than two hours in a workday because of her

chronic pain, lumbar DDD, and degenerative joint disease in her

hips. (R. at 430.) According to Dr. Collier, Vaughn would have

needed four breaks lasting one hour each to provide her sufficient

relief from any alternating sitting and standing while working because of X-rays showing her lumbar and thoracic spondylosis. (R. at 431.) He also opined that she could never climb, balance, stoop, kneel, crouch, or crawl, but that she could reach, handle, finger, feel, see, hear, and speak. (R. at 431.) According to the report, Vaughn's work environment would need to be restricted as it relates to heights, moving machinery, temperature extremes, chemicals, and dust because of her COPD. (R. at 431.) Lastly, Dr. Collier noted that Vaughn's general prognosis was that she had multiple chronic medical conditions that would continue to worsen and gradually decline over time. (R. at 431.) Additionally, Dr. Collier included a list of the records that he considered in forming his opinion, which included records ranging from July 26, 2006, through June 15, 2017, although the majority of the records that he considered were dated between 2013 and mid-2016. (R. at 432.)

The ALJ found that Dr. Collier's opinion was not persuasive because his opinion was rendered "nearly 3 years after the date last insured and is inconsistent with the record during the period relevant to this determination." (R. at 22.) Specifically, the ALJ found that Dr. Collier's reliance on the fact that Vaughn had a limited range of motion was contradicted by examinations of her gait and station (which were normal) and that her reported aggravation on ambulation and exertion was contradicted by her

admission that she was independent in her activities of daily living. (R. at 22.)

After determining Vaughn's RFC, the ALJ then found that she was unable to perform any of her past relevant work. (R. at 22-23.) However, based on the vocational expert's testimony, Vaughn's age, and her ability to communicate despite a marginal education, the ALJ found that Vaughn could have worked as a marker, a photocopying machine operator, or a router during the relevant period of disability. (R. at 23-24.) As a result, the ALJ found that Vaughn was not under a disability at any time between November 1, 2011, and December 31, 2015. (R. at 24.) Vaughn subsequently filed a request for review with the Appeals Counsel, which was denied on April 23, 2020. (R. at 1.) Vaughn filed the instant lawsuit on April 30, 2020. (ECF No. 1.) On appeal, Vaughn's primary argument is that the ALJ erred in how she considered the various medical source opinions and prior administrative findings in the record. (ECF No. 21.)

## II.  CONCLUSIONS OF LAW

### A.  Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not

try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to Social Security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On

the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

## C.   Medical Opinion Evidence

Vaughn's arguments on appeal challenge how the ALJ weighed and considered medical opinion evidence in the record. As an initial matter, because Vaughn filed her application for disability insurance benefits after March 27, 2017, the ALJ's consideration of medical opinion evidence and prior administrative medical findings was required to be guided by 20 C.F.R. § 404.1520c. See Berry on Behalf of Berry v. Comm'r of Soc. Sec., 1:19 CV 2472, 2020 WL 6385458, at *6 (N.D. Ohio Sept. 22, 2020), report and recommendation adopted, 2020 WL 6383189 (N.D. Ohio Oct.

- 16 -

30, 2020) ("The new regulations for evaluating medical opinions apply to Claimant's case because he filed his application after March 27, 2017."). Additionally, it is undisputed that Vaughn's disability insurance status expired on December 31, 2015, and that, as a result, Vaughn "must . . . prove that [she] became disabled prior to [that date], in order to qualify for disability benefits." Moon v. Sullivan, 923 F.3d 1175, 1182 (6th Cir. 1990).

Under 20 C.F.R. § 404.1520c(a), an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." Instead, ALJs are directed to analyze the persuasiveness of medical opinions and prior administrative medical findings by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c). The regulations provide that the supportability and consistency factors are the most important factors for an ALJ to consider. 20 C.F.R. § 404.1520c(a). In articulating the persuasiveness of each medical source opinion, an ALJ must explain how he or she considered these two factors. 20 C.F.R. § 404.1520c(b)(2); see Jones v. Berryhill, 392 F. Supp. 3d 831, 839 (E.D. Tenn. 2019) ("Supportability and consistency will be the most important

factors, and usually the only factors the ALJ is required to articulate.") (quoting Pogany v. Berryhill, 4:18-CV-04103-VLD, 2019 WL 2870135 at *27 n.7 (D.S.D. July 3, 2019)); see also Cook v. Comm'r of Soc. Sec., No. 6:20-cv-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021) ("Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record."). As for the other listed factors, the regulations state that an ALJ may, but is not required to, articulate how he or she considered them in evaluating a medical source opinion. 20 C.F.R. § 404.1520c(b)(2).

In practice, "the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion." Lester v. Saul, No. 5:20CV1364, 2020 WL 8093313, at *10 (N.D. Ohio, Dec. 11, 2020), report and recommendation adopted, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (quoting Ryan L.F. v. Comm'r of Soc. Sec., No. 6:18-cv-01958-BR, 2019 WL 6468560, at *4 (D. Ore. Dec. 2, 2019)); see also Jones, 392 F. Supp. 3d at 839 (holding that claims filed after March 27, 2017, are not subject to the treating physician rule or other requirements based on superseded regulations) (citing Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009)). Regardless, "the ALJ must still 'articulate how [he/she]

considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" Lester, 2020 WL 8093313, at *10 (quoting Ryan L.F., 2019 WL 119287, at *4). As such, despite the new standards being more relaxed than their predecessors, an ALJ must still "provide a coherent explanation of his [or her] reasoning" in analyzing each medical opinion. Id. at *14.

> 1.   Dr. Thomas Thrush, M.D., and Dr. Martin Rubinowitz, M.D.

Vaughn first argues that the ALJ erred by considering the opinions of Dr. Thomas Thrush, M.D., and Dr. Martin Rubinowitz, M.D., two state agency non-examining physicians. Both Dr. Thrush and Dr. Rubinowitz opined that Vaughn was not disabled because there was "insufficient evidence to evaluate the claim." (R. at 73-74, 85-86.) The ALJ found that neither opinion was persuasive because both

> found [Vaughn] had severe impairments, but determined there was insufficient evidence to evaluate the claim prior to the date last insured. . . . [T]he record sufficiently supports limitations to a light exertion level based evidence prior to the date last insured. Notably, the record contained physical examinations and objective evidence prior to the date last insured.

(R. at 22.) As a result, the ALJ did not incorporate either opinion into Vaughn's RFC, instead electing to impose more substantial physical restrictions than either recommended.

The court notes that Vaughn's primary argument against the ALJ considering Dr. Thrush's and Dr. Rubinowitz's opinions (to the extent that she did at all, which is questionable at best) is that

"[t]hese form reports are never entitled to weight, as they come from contractors who spend only a few minutes on a file[] and are supervised by nonmedical agency employees." (ECF No. 21 at 15.) In support of this policy argument, Vaughn cites to a newspaper article discussing problems with Tennessee's disability determination process. The newspaper article criticizes Dr. Thrush's work specifically.

Vaughn's argument is not compelling for two reasons. First, Dr. Thrush's and Dr. Rubinowitz's opinions are prior administrative medical findings, as defined by 20 C.F.R. § 404.1513(a)(5), which the ALJ must consider "because . . . Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."[5]

---

[5]20 C.F.R. § 404.1513(a)(5) reads:

Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in your current claim based on their review of the evidence in your case record, such as:

(i) The existence and severity of your impairment(s);

(ii) The existence and severity of your symptoms;

(iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;

(iv) Your residual functional capacity;

20 C.F.R. § 404.1513a(b)(1); see Gower v. Saul, NO. 4:19-CV-00058-HBB, 2020 WL 1151069, at *4 (W.D. Ky. Mar. 9, 2020) ("[A]dministrative law judges '*must* consider' medical findings of non-examining state agency medical or psychological consultants according to the new regulation." (emphasis added)). Second, this court has an important but limited role in the Social Security disability determination process: to evaluate whether the ALJ's decision was supported by substantial evidence and whether the ALJ used the correct legal criteria to make his or her decision. See, e.g., Cardew, 896 F.3d at 745. The court generally cannot consider evidence outside of the administrative record, such as newspaper articles. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 839 (6th Cir. 2016). Vaughn's argument regarding Dr. Thrush and Dr. Rubinowitz is without merit.[6]

---

    (v)  Whether  your  impairment(s)  meets  the  duration
    requirement; and

    (vi) How failure to follow prescribed treatment
    and  drug  addiction  and  alcoholism  (see  §  404.1535)
    relate to your claim.

[6]In any event, the court finds that the ALJ properly analyzed Dr. Thrush's and Dr. Rubinowitz's opinions. In her explanation of both opinions, the ALJ noted that they were inconsistent with the record evidence showing Vaughn could have worked only at a light exertional level and that their explanations behind their opinions (that there was not enough evidence) were directly contradicted by the fact that "the record contain[ed] physical examinations and objective evidence prior to the date last insured." (R. at 22.) Explaining how the supportability and consistency factors were considered is "all the regulations require." Smith v. Comm'r of

2.   Dr. Stephen Collier, M.D.

Vaughn next argues that the ALJ erred by not adopting the RFC proposed by Dr. Collier. Vaughn avers that "[t]he ALJ failed to evaluate the reviewing specialist's opinion evidence under all of the 20 CFR 404.1520c factors" and that, had the ALJ done so, Dr. Collier's opinion would have been "entitled to the greatest weight." (ECF No. 21 at 13, 15.) As a threshold matter, the undersigned notes that this argument overlooks several pertinent subsections of the applicable regulations. For instance, 20 C.F.R. § 404.1520c(b)(2), which states that an ALJ "may, *but [is] not required to*, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate." Based on the plain language of the regulations, it is not error for an ALJ to not articulate how he or she considered factors other than consistency and supportability. Similarly, it ignores 20 C.F.R. § 404.1520c(a), which abrogates the treating physician rule and states that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." See Harris v. Saul, No. 19-CV-03715-NRN, 2021 WL 406080, at *4 (D. Colo. Feb. 5, 2021) ("The new

_____

Soc. Sec., No. 2:20-cv-2886, 2021 WL 1996562, at *6 (S.D. Ohio May 19, 2021).

regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c abrogate the treating physician rule for claims filed on or after March 27, 2017."). As such, the ALJ was not required to assign any specific weight to Dr. Collier's opinion beyond identifying how persuasive she found it, which she did. See Merrell v. Comm'r of Soc. Sec., No. 1:20-cv-769, 2021 WL 1222667, at *6 (N.D. Ohio Mar. 16, 2021) (noting that, under § 404.1520c, "[t]he ALJ was not required to give any specific weight or deference to [the medical source]'s opinions").

Therefore, contrary to Vaughn's assertions, under the applicable regulations, the issue before the court is limited to whether the ALJ sufficiently explained her reasoning on the consistency and supportability factors. See Jones 392 F. Supp. 3d at 839 (quoting Pogany, 2019 WL 2870135, at *27 n.7). In her opinion, the ALJ found that Dr. Collier's opinion was unpersuasive because

> it was provided nearly 3 years after the date last insured and is inconsistent with the record during the period relevant to this determination. Specifically, an examination of the claimant's musculoskeletal system revealed limited range of motion, but claimant's gait and station were normal. Claimant reported aggravation on ambulation and exertion, but also admitted she was independent in her activities of daily living. As such, the record does not support a limitation to work within the sedentary level.

(R. at 22.) The court finds that this statement is sufficient to address the consistency factor. See 20 C.F.R. § 404.1520c(c)(2)

- 23 -

("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). Although the ALJ described her concerns about the consistency of Dr. Collier's opinion with the rest of the record in general terms, she elaborated on several aspects of the record that illustrate her noted inconsistencies in other parts of her decision. See Crum v. Comm'r of Soc. Sec., 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.") (citing Forrest v. Comm'r of Soc. Sec., 591 F. App'x 359, 366 (6th Cir. 2014)). For instance, in recounting Vaughn's medical history, the ALJ observed that, as of December 9, 2014, Vaughn reported to her physicians that she was "able to exercise, prepare her own meals, do her own housework and home maintenance, and bathe and groom herself." (R. at 21, 369.) These are all activities reported in the record that plainly contradict Dr. Collier's opinion and are valid reasons for the ALJ to discount it. See Rottmann v. Comm'r of Soc. Sec., 817 F. App'x 192, 196 (6th Cir. 2020) ("We therefore agree with the district court that the inconsistencies between Rottmann's self-reported activities and the treating physicians'

medical reports provide substantial evidence to support the ALJ's findings."); Neumann v. Comm'r of Soc. Sec., No. 1:19-cv-816, 2020 WL 7350587, at *7 (W.D. Mich. Dec. 15, 2020) ("The ALJ properly weighed Dr. LeMieux's opinions and expressed that he was assigning them little weight as they were inconsistent not only with the medical record as a whole, but also with Plaintiff's self-reported activities."). Likewise, the ALJ highlighted how the June 2016 exam showed that Vaughn's gait and station were normal (along with her thoracolumbar back) shortly after the relevant period of disability lapsed when recounting her medical history, further contradicting a finding of disability during the relevant period. (R. at 21.); see Risner v. Berryhill, No. 18-cv-01008-TMP, 2019 WL 1421766, at *4 (W.D. Tenn. Mar. 29, 2019) ("The court finds that the ALJ gave good reasons to give no weight to the opinion of Dr. Schwartz, as the opinion was inconsistent with the clinical findings from Risner's examinations, her conservative treatment, and her daily activities."). Therefore, the court finds that the ALJ provided a coherent, albeit brief, explanation as to her consideration of the consistency factor. See Lester, 2020 WL 8093313, at *14.

Whether the ALJ properly addressed the supportability factor is a different matter. Under the new regulations, supportability is defined as: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to

support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). In other words, the supportability analysis "focuses on the physicians' explanations of the opinions." Lavinia R. v. Saul, No. SAG-20-1083, 2021 WL 2661509, at *3 (D. Md. June 29, 2021). The only aspect of the ALJ's decision that can be directly attributed to an analysis of how Dr. Collier supported his opinion is the ALJ's statement that "it was provided nearly 3 years after the date last insured." (R. at 22.); see Merrell, 2021 WL 1222667, at *7 ("[T]he ALJ's first criticism – that Dr. D'Silva's opinions were completed 'well past the prescribed period' – bears upon the supportability of Dr. D'Silva's opinions."). The remainder of the ALJ's analysis has no bearing on whether Dr. Collier provided support or an evidentiary basis for his medical opinions.

The Commissioner argues that the ALJ's mention of the fact that Dr. Collier rendered his opinion nearly three years after the relevant period of disability lapse is, on its own, enough to sufficiently address the supportability factor. In its brief, the Commissioner relies on Emard v. Commissioner of Social Security, 953 F.3d 844 (6th Cir. 2016), and Grisier v. Commissioner of Social Security, 721 F. App'x 473 (6th Cir. 2018), for the proposition that a physician opinion lacks support where "it was provided after

- 26 -

the relevant time period at hand."[7] (ECF No. 24 at 9-10.) In Emard, the Sixth Circuit held that an ALJ properly discounted a physician's opinion where the opinion did not appear to relate back to the relevant period of disability at all. 953 F.2d at 850. The Sixth Circuit referenced the fact that the physician discussed conditions that were not apparent in the record until after the claimant's date last insured and the fact that "the physician's opinion was phrased in the present tense and described [claimant]'s specific limitations 'at the current time.'" Id. The Sixth Circuit expressly noted that, "[h]ad [the physician]'s opinion described [claimant]'s specific limitations during the insured period, the ALJ would have been required to give the opinion more weight." Id. Moreover, the Sixth Circuit also observed that the ALJ's decision was supported by other evidence in the record, specifically that "[his] medical records show that he responded positively to medical intervention, that his physical exams were mostly normal, and that [he] pursued a conservative line of treatment." Id. at 850-51. Likewise, in Grisier, the Sixth Circuit held that an ALJ was justified in discounting the weight of a physician opinion where the evaluation was "conducted . . . without the benefit of any medical records from the relevant period, and . . . explicitly

---

[7]As an aside, both Emard and Grisier rely on the prior regulations for weighing physician opinions in disability applications filed before March 27, 2017. See 20 C.F.R. § 404.1527(c).

found that [claimant] 'would have very, very significant limitations right now.'" 721 F. App'x at 477. As such, the ALJ had substantial evidence to conclude that the physician's "evaluation [did] not make any findings regarding [claimant]'s condition during the relevant period." Id.

Unlike in both Emard and Grisier, it does not appear that Dr. Collier's opinion was based on Vaughn's condition years after the relevant period of disability lapsed. Notably, Dr. Collier based his analysis strictly on Vaughn's medical records (including records from before, during, and after the relevant period of disability) rather than a comprehensive physical examination taken years after the fact. Indeed, in his letter describing his findings, Dr. Collier expressly referenced X-rays taken on December 11, 2014; a spirometry report from December 9, 2014; her diagnosis of COPD on December 9, 2014; and that Vaughn's gallbladder was removed in 2014. (R. at 429.) Moreover, Dr. Collier included with his opinion a list of records that he reviewed, which completely encompasses the relevant period of discovery. (R. at 432.) As such, it is clear that Dr. Collier's opinion was based on Vaughn's condition during the relevant period of disability and the mere fact that it was rendered approximately three years later is insufficient to show that the ALJ adequately considered the supportability factor. See Emard, 953 F.3d at 850 ("Had Dr. Masters's opinion described Emard's specific limitations during

- 28 -

the insured period, the ALJ would have been required to give the opinion more weight."); see also Merrell, 2021 WL 1222667, at *8 ("Because Dr. D'Silva's July 31, 2018 opinion specifically stated that he was assessing Merrell's condition as of December 1, 2015 – which was within the relevant period – the fact that the opinions were authored nearly three years later alone would not have been enough to discount the opinions."). Thus, because the ALJ did not provide any analysis as to how Dr. Collier explained and rationalized his opinions beyond expressing concern about the date the opinion was rendered, the court finds that the ALJ's decision is insufficient to address the supportability factor for Dr. Collier. Warren I. v. Comm'r of Soc. Sec., 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (finding that an ALJ did not address the supportability factor where the ALJ did not address "the degree of explanation provided in each opinion, including the clinical findings and objective signs cited, for the restrictive limitations set forth").

The revised regulations for considering medical source opinions are clear: "we *will* explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(2) (emphasis added). This mandate sets out a "minimum level of articulation" such that "[an] ALJ's failure . . . to meet these minimum levels

of articulation frustrates [the] court's ability to determine whether [claimant's] disability determination was supported by substantial evidence." Warren I, 2021 WL 860506, at *8. The ALJ did not meet this standard, and therefore she erred in articulating her opinion. See Scott S. v. Saul, No. 2:20-CV-00236-JTR, 2021 WL 1894135, at *6 (E.D. Wash. May 11, 2021) (reversing an ALJ's order where he "did not address the consistency between Dr. Smiley's opinion and other opinions in the file, and only discussed the supportability within the record"). Therefore, remand is necessary "unless it is harmless error." Thaxton v. Comm'r of Soc. Sec., 815 F. App'x 955, 960 (6th Cir. 2020) (quoting Gentry v. Comm'r of Soc. Sec., 741 F. App'x 708, 723 (6th Cir. 2014)).

Under the prior regulations, the Sixth Circuit recognized three situations where an ALJ's procedural error in considering a medical source opinion was harmless. See Shields v. Comm'r of Soc. Sec., 732 F. App'x 430, 438 (6th Cir. 2018). These situations are "(1) where 'a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it,' (2) where 'the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion,' and (3) 'where the Commissioner has met the goal of . . . the procedural safeguard of reasons.'"[8] Id. (quoting Wilson v. Comm'r of Soc. Sec., 378 F.3d

---

[8]It should be noted that, as evidenced by its reference to the treating physician rule, the Sixth Circuit's harmless error

541, 547 (6th Cir. 2004)). However, "'[a] procedural error is not made harmless simply because [the claimant] appears to have . . . little chance of success on the merits." Id. (quoting Wilson, 378 F.3d at 547).

Upon review, it is clear that neither of the first two categories of harmless error apply to the ALJ's consideration of Dr. Collier's opinion, as the report was not patently deficient and the ALJ did not otherwise adopt it. See Smith v. Saul, No. 18-

---

doctrine is predicated on 20 C.F.R. § 404.1527(d)(2), which was replaced by 20 C.F.R. § 404.1520c. However, the doctrine applies with equal force to procedural errors under § 404.1520c because, as the Northern District of Ohio articulated,

> [t]he new regulation . . . shares the old regulation's goals. . . . [T]he new regulation is supposed to make it easier for ALJ's to discount treating physician opinions. It would make little sense, therefore, to hold the ALJ to a more stringent and unforgiving procedural requirement under the new regulation than that applied under the old regulation.

Burba v. Comm'r of Soc. Sec., No. 1:19-CV-905, 2020 WL 5792621, at *4 (N.D. Ohio Sept. 29, 2020) (citing Wilson, 378 F.3d at 544 and omitting internal citations to the record); see also Todd v. Comm'r of Soc. Sec., No. 3:20-cv-1374, 2021 WL 2535580, at *7-8 (N.D. Ohio June 3, 2021), report and recommendation adopted, 2021 WL 2530846 (N.D. Ohio June 21, 2021) (finding that an ALJ's error in failing to consider the consistency factor for a physician opinion was not harmless where "[t]he ALJ's terse reasoning failed to build an accurate and logical bridge between the evidence and his conclusion" thus making meaningful review impossible, but recognizing that harmless error may apply to procedural errors under § 404.1520c in certain circumstances) (citing Blakley, 581 F.3d at 409); but see Scott S., 2021 WL 1894135, at *6-7 (remanding an ALJ's decision for not meeting the requirements of § 404.1520c without addressing harmless error); Warren I., 2021 WL 860506, at *8 (same).

1251-TMP, 2020 WL 259556, at *4 (W.D. Tenn. Jan. 17, 2020) (observing that a physician opinion is only patently deficient in "exceptional circumstances [where] the record is entirely inconsistent with a treating physician's opinion, or when a treating physician's opinion is accompanied by no explanation, or appears to be half-finished") (citing Shields v. Comm'r of Soc. Sec., 732 F. App'x 430, 440 (6th Cir. 2018), Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468, 474 (6th Cir. 2016), and Gursky v. Colvin, No. 16-CV-2654-TMP, 2017 WL 6493149, at *4 (W.D. Tenn. Dec. 19, 2017)). As for the third category of harmless error, the Sixth Circuit has stated that it "is saved for the 'rare case' where the ALJ has met the 'goal' of § 404.1527, 'if not meeting its letter.'" Thaxton, 815 F. App'x at 960 (quoting Nelson v. Comm'r of Soc. Sec., 195 F. App'x 462, 472 (6th Cir. 2006)). "The goal is to provide sufficient notice to a claimant and not offend a claimant's rights to due process." Id. Accordingly, this occurs where the ALJ provides good reasons for discounting the physician opinion "in some other part of the decision but fails to explicitly state those reasons" when discussing the physician opinion itself. Smith, 2020 WL 259556, at *4 (citing Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010)).

The court finds that the ALJ achieved the regulations' goal of providing notice to Vaughn of why Dr. Collier's opinion was not persuasive. Dr. Collier's opinion was entirely predicated on a

review of Vaughn's medical history and, when recounting that same medical history, the ALJ identified several instances where Vaughn's medical records did not support a finding of disability. As such, the ALJ's discussion of Vaughn's medical history is, in essence, a discussion of whether the evidence Dr. Collier reviewed could actually support his conclusions. Thus, while not being a direct attack on the supportability of Dr. Collier's opinion as contemplated by the regulations, the ALJ's opinion is only one step removed from articulating why she believed the basis for Dr. Collier's opinion was faulty, i.e. an explanation of the supportability factor. See Nelson v. Comm'r of Soc. Sec., 195 F. App'x 462, 470-71 (6th Cir. 2006) (holding that an ALJ met the goals of the regulations' procedural safeguards, despite not adhering to the letter of the law, where his decision as a whole was "an indirect attack" on the supportability and consistency of two physician opinions and the decision made it clear that the opinions did not warrant controlling weight); Bryson v. Comm'r of Soc. Sec., No. 1:20-cv-1137, 2021 WL 2735993, at *17 (N.D. Ohio June 10, 2021) ("[W]hen the ALJ's opinion is read as a whole, it meets the goals of the regulations' procedural safeguards by providing an indirect attack on the omitted pace limitation.") (citing Nelson, 195 F. App'x at 470); Burba, 2020 WL 5792621, at *4 ("[E]ven if the ALJ did not fully comply with 20 C.F.R. § 404.1520c, any error was harmless because her decision met the

goals of the regulation by indirectly attacking the consistency of Dr. Ervine's opinion with evidence from other medical sources."). Because the ALJ's decision on the whole gives the court a logical understanding of why she believed Dr. Collier's opinion lacked record support, the regulation's goal for the ALJ to "provide a coherent explanation of his or [her] reasoning" as to how persuasive a physician opinion is satisfied. Lester, 2020 WL 8093313, at *14. Therefore, the court finds that the ALJ's error was harmless and thus remand is not necessary.[9]

### III.  CONCLUSION

For the reasons above, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

/s/ Tu M. Pham
TU M. PHAM

---

[9] Vaughn also argues that the ALJ erred by implanting an RFC that was not proposed by a medical source, thereby "play[ing] doctor" and constituting a "substituted agency opinion." (ECF No. 21 at 11, 14.) The Sixth Circuit has routinely rejected the argument that an ALJ lacks authority to craft an RFC without a corresponding medical source opinion. See Reinartz v. Comm'r of Soc. Sec., 795 F. App'x 448, 449 (6th Cir. 2020) ("The effect of a claimant's conditions on her ability to work, however, is a determination expressly reserved for the ALJ. Thus, the premise of Reinartz's argument — that the ALJ lacked the capacity to make this determination — is wrong.") (internal citations omitted); Durard v. Saul, No. 5:20-CV-00102-LLK, 2021 WL 467208, at *1 (W.D. Ky. Feb. 9, 2021) ("The ALJ did not "improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity [RFC] finding.") (quoting Poe v. Comm'r of Soc. Sec., 342 F. App'x 149, 157 (6th Cir. 2009)). As such, this argument is not well-taken.

Chief United States Magistrate Judge

July 20, 2021 _____
Date